(No. 5385. May 2, 1930.)

In the Matter of the Arbitration and Award Between IDAHO GOLD DREDGING CORPORATION, Respondent, and BOISE PAYETTE LUMBER COMPANY, Appellant.

[288 Pac. 641.]

Alfred A. Fraser, for Appellant.

Claude W. Gibson, for Respondent.

VARIAN, J.—Arbitration proceeding under C. S., sec. 7428 et seq. On April 14, 1922, appellant Boise Payette Lumber Company, hereinafter called the "lumber company," entered into a written contract with one W. H. Estabrook, hereinafter referred to as the "owner," the then owner of the "Dessie D.," "Star," "Morning Star," and "Midnight" placer mining claims, situate in Boise County, Idaho, whereby a temporary easement for a right of way for railroad purposes was granted the lumber company across said described mining claims. The parties

agreed that the lumber company would also have the right to construct sidings, skidways, and log landings on Estabrook's premises. The easement was further granted upon the express condition that the occupation and use of the ground for said right of way should in no manner interfere with the mining operations of Estabrook, his grantees, successors or assigns. The lumber company agreed, upon demand, within ninety days after written notice to do so, to remove all railroads, tracks, structures, and improvements placed on the said premises or any part thereof, to the end that mining operations or preparations therefor might be proceeded with without hindrance or interference from or because of such tracks, structures or improvements. The lumber company, in case it elected to remove its railroad, tracks and improvements, was to have six months for that purpose, after notifying the owner of its election, but under no circumstances was the lumber company to be permitted to maintain its track or structures as a hindrance to, or interference with, the mining operations or preparations therefor. The failure of the lumber company to comply with the terms of the agreement would render it liable for the damage thereby caused, and if it failed or refused to remove the track or structures, the owner "shall have the right, at the expense and sole liability" of the lumber company, to remove the interfering structures. The agreement provided for payment of a rental charge by the lumber company, and that all its terms and provisions should be binding upon the parties, their grantees, successors and assigns.

Under date of September 11, 1928, the Idaho Gold Dredging Corporation, hereinafter called the "dredging company," as the owner of, and successor in interest of W. H. Estabrook in, said placer mining claims, entered into an arbitration submission agreement with the lumber company, reciting, among other things, the execution of the agreement first above referred to; the construction of a railroad, sidings, skidways, log landings, and structures on said mining claims; the ownership of said mining claims

by the dredging company; its succession to all the rights of the owner under said contract and to recover any damages arising under or by reason of said agreement against the lumber company, whether suffered by the dredging company or its immediate predecessor in interest, the Gold Dredging & Power Corporation, since January 22, 1926, since which date the mining claims have been mined by means of a dredge, now owned by the dredging company, which likewise owns all unpaid rentals specified in the said original agreement.

The submission agreement further states that a controversy has arisen between the parties as to the amount of damages and rentals due the dredging company, as arising and to arise out of the agreement first mentioned by reason of the construction, use and operation of its said works and its occupation of said mining claims, which controversy the parties "desire to fully and finally settle by arbitration under this submission." The submission agreement further recites that the controversy submitted does not cover any claims or demands of the dredging company against the lumber company that have arisen or may hereafter arise by reason of the use by the lumber company of grease and oils in its lumbering or logging operations, such demands being expressly excluded from the submission and arbitration, which "covers and includes all other claims and demands arising out of or that may arise out of, under or by reason of said agreement, and extends to the said mining claims already worked and those not yet worked, it being the desire that the controversy be fully and finally settled by this arbitration and award," except as to matters referring to said oil and grease. Thereupon the agreement recites that the controversy, as limited and defined therein, is submitted to arbitration and award, as permitted by C. S., sec. 7428, to R. W. Faris, N. Eugene Brasie, and M. A. Regan, as arbitrators. No time was specified within which the award must be made. The submission agreement required the dredging company to file with the arbitrators, at their first meeting or prior thereto,

itemizations of its claims against the lumber company. It likewise stipulated "that this submission be entered as an order of the District Court of the Third Judicial District of the State of Idaho, in and for Ada County, .... as provided in" C. S., sec. 7430; that the award be in writing, signed by the arbitrators or a majority thereof; that it be filed with the clerk of said court; that a note thereof be entered by him in the register of actions, and it be entered in the judgment book with the effect of a judgment, as provided by C. S., secs. 7430 and 7433, "and as otherwise provided by law and this submission."

The agreement further provides for the arbitrators to meet at times and places to be determined by them; that the evidence need not be reduced to shorthand or writing; that they may select a chairman from their number to administer oaths; that the parties may be represented by counsel, and service of notices or papers on counsel shall be binding on the parties; that they are not bound by the legal rules of evidence, and all evidence bearing on the case should be freely admitted; that they may view the premises; and that it is understood and agreed that the arbitration extends not only to past damages and demands arising under said agreement, a copy of which is attached, "but also to all future damage and demands that may arise and accrue to the mining claims not yet dredged or mined, it being the desire and intention of both parties to this submission to finally and completely determine and settle all damages and demands of said controversy under said agreement that have already accrued and that may accrue in the future on the unworked mining claims, and the award shall cover all the same."

The submission agreement was filed with the clerk of the said district court on September 14, 1928, who thereupon entered it in his register of actions, where the record appears as follows:

"Transferred to JUDGE BRINCK Sept. 15, 1928.

REGISTER OF ACTIONS.

Case No. 12083.

In the Matter of the Arbitration and Award Between IDAHO GOLD DREDGING CORPORATION and BOISE PAYETTE LUMBER COMPANY.

Claude W. Gibson, for Plaintiff,

Alfred A. Fraser, for Defendant.

| Date of Filing. | Papers Filed. | Paid County. |
|---|---|---|
| Sep. 14, 1928 | To Stenographer's fees | Sept. 14, 1928 $10.00 |
| Sep. 14, 1928 | To filing Submission Agreement. dated Sept. 11, 1928 | |
| Sep. 14, 1928 | To register of Actions. | |
| Sep. 14, 1928 | To file Oath of Arbitrators, R. W. Faris, N. Eugene Brasie, M. A. Regan | Recorded Journal Page X 294 |
| Sep. 29, 1928 | To file statement | |
| Sep. 29, 1928 | " " Award | |
| Oct. 24, 1928 | " " Motion to vacate & Set aside award, etc. | |
| Oct. 24, 1928 | " " affidavit service filing award. | |
| Oct. 27, 1928 | " " notice of filing award. | |
| Oct. 27, 1928 | " " judgment. | |
| Jan. 9, 1929 | " " Order denying motion to vacate award. | |
| Jan. 9, 1929 | " " Notice denial motion to vacate award. | |
| Jan. 15, 1929 | " " Notice of appeal. | |
| Jan. 15, 1929 | " " Agreement as to amount supersedeas bond. | |
| Jan. 15, 1929 | " " Undertaking on appeal. | |
| Jan. 15, 1929 | " " Order for transcript. | |
| Jan. 15, 1929 | " " Order for Reporter's transcript. | |
| Jan. 15, 1929 | " " Praecipe to Clerk. | |
| Jan. 26, 1929 | " " Order send up exhibits. | |
| Jan. 30, 1929 | " " Acknowledgment of service Rep. Trans. on app. | |
| Jan. 30, 1929 | " " Acknowledgment of service Rep. Trans. on app. | |
| Jan. 30, 1929 | " " Stipulation re Rep. Trans. on. app. | |
| Jan. 30, 1929 | " " Order settling Rep. Trans. on app." | |

On September 18, 1928, counsel for the dredging company served counsel for the lumber company with an itemized statement of damages claimed. It consists of twelve separate items of damage and one item of rental.

On September 29, 1928, the award was filed, being signed by two of the arbitrators, allowing damages for each item in the amount claimed, except two aggregating $5,355.46, covering dam construction and loss of dredging time, disallowed *in toto*, and partially allowing a claim for removal of two bridges, brush and debris from the Morning Star claim.

On November 16, 1928, the lumber company filed its amended motion to vacate the award upon several grounds: That gross error was committed in fixing the amount of the award; that it was excessive and not sustained by the evidence and includes therein matters not included in the submission, and therefore the arbitrators exceeded their powers; that items Nos. 1, 2, 3, 4, 7, 9, 10 and 12 of the award were improperly allowed; that the arbitrators acted improperly and were guilty of misconduct because they based their award on matters and things not submitted to them under the submission agreement; that the arbitrators exceeded their powers in making the award in that the evidence shows the dredging company proceeded under the terms and conditions of the contract to remove the structures, improvements and tracks placed upon the premises by the lumber company, and were entitled to recover the cost of so removing the same, and that the arbitrators not only allowed the cost of removal but also allowed the damages caused by the negligent removal of said structures, etc.; that the submission agreement required the arbitrators to determine matters upon which there was no controversy; and that the submission agreement "is void and of no force nor effect as it tends to and does oust the courts" of jurisdiction over said matters, and is against public policy. The motion to vacate the award was denied, and the lumber company appeals.

It is first urged that the court was without jurisdiction to enter the award for the reason that no order of the district court was made submitting the controversy to arbitration, and that the entries made by the clerk in his register of actions are not sufficient to confer jurisdiction. The sections of the statutes applicable read as follows:

C. S., sec. 7428: "Persons capable of contracting may submit to arbitration any controversy which might be the subject of a civil action between them, except a question of title to real property in fee or for life. This qualification does not include questions relating merely to the partition or boundaries of real property."

C. S., sec. 7430: "It may be stipulated in the submission that it be entered as an order of the district court, for which purpose it must be filed with the clerk of said court for a county where the parties, or one of them, reside. The clerk must thereupon enter in his register of actions a note of the submission, with the names of the parties, the names of the arbitrators, the date of the submission, when filed, and the time limited by the submission, if any, within which the award must be made. When so entered, the submission cannot be revoked without the consent of both parties. The arbitrators may be compelled by the court to make an award, and the award may be enforced by the court in the same manner as a judgment. If the submission is not made an order of the court, it may be revoked at any time before the award is made."

It was stipulated in the submission agreement "that this submission be entered as an order of the District Court of the Third Judicial District of the State of Idaho, in and for Ada County, . . . . as provided in Section 7430," etc. The record shows that the submission agreement was in fact filed with the clerk of said court; that the clerk, as hereinbefore shown, entered in his register of actions a note of the submission, with the names of the parties, the names of the arbitrators, and the date of the submission agreement and the date when filed. No time was fixed by the agreement within which the award must be made, and the clerk's record is silent on that point. The law requires the submission agreement to be entered "as an order of the district court," and provides that the submission agreement be filed with the clerk for the purpose of entering it as an order. It does not require that the clerk must enter an order signed by the court, but must enter the agreement signed by the parties, which has the force and effect of an

order. The entry of the matters required by the statute is sufficient in this case, since it made a record of the proceeding upon the register of actions, one of the records in the clerk's office. (See 20 C. J., p. 1266.) The entries in the register constitute a memorandum or note (46 C. J., p. 531) of the submission.

Our sections of the statute seem to have been borrowed bodily from the California code (Code Civ. Proc., secs. 1281, 1283), and identical statutes were enacted in Nevada, Utah and Montana. Nevada, in an early case, held that the provisions of the statute, being in derogation of the common law, should be strictly construed. (*Steel v. Steel*, 1 Nev. 27.) However, in California and Utah it is sufficient if the requirements of the statute are substantially complied with. (*Kreiss v. Hotaling*, 96 Cal. 617, 31 Pac. 740; *In re Joshua Hendy Mach. Works*, 9 Cal. App. 610, 99 Pac. 1110; *Richards v. Smith*, 33 Utah, 8, 91 Pac. 683.) This seems to be the general rule. (See 5 C. J., pp. 20, 123.)

In *Heslep v. City of San Francisco*, 4 Cal. 1, cited by appellant, in a pending action the parties entered into a written stipulation that the controversy might be referred to three persons for arbitration. The court said:

"The record in this case does not show any order or entry of the submission in proper form of law, or notice of motion for judgment. There is nothing but the stipulation to refer the case, and the judgment thereon. The persons chosen to decide the controversy are named as referees, and appear to be so treated and considered by the court in all subsequent stages of the proceedings, so that there is nothing to warrant us in treating them as arbitrators under the statute."

The court held that to constitute "a reference" under the California statute, there must be an order of court. That case has no application to the facts of the case at bar.

In the later case of *Carsley v. Lindsay*, 14 Cal. 390 (395), the Heslep case is referred to and distinguished, the court interpreting an early statutory requirement as to entry of the award as a judgment, saying:

"It is not necessary to obtain an order of the court or judge to enable the clerk to make this entry in the case provided. The agreement itself is a consent that judgment shall be so entered, and it may then be entered by the clerk like a judgment by default, subject, as provided by statute, to the action of the court."

We find there has been a substantial compliance with the provisions of the statute in drawing the submission agreement, the filing and entering of the same, and subsequent proceedings had thereon.

 It is further contended that the arbitrators were without jurisdiction to make the award since the arbitration agreement provided that the arbitration extended not only to past damages and demands arising under the easement agreement, "but also to all future damage and demands that may arise and accrue to the mining claims not yet dredged or mined," and the statute (C. S., sec. 7428) limits the right of arbitration to controversies that might be the subject of civil action. Appellant urges that there was no dispute cognizable under this statute until the obstructions were removed from all of the mining claims.

The easement contract provided that the failure of the lumber company to comply with the terms thereof should render it liable for the damages which such failure caused, and if the lumber company, upon notice, failed or refused to remove its track or structures, the owner should "have the right, at the expense and sole liability" of the lumber company, to remove the interfering structures. It was optional whether the owner would remove the structures, and the recovery of damages for breach of the contract was not dependent upon his removing them. It appears from the record that the lumber company had breached its easement agreement with the owner, and that a cause of action had accrued as to the amount of damages occasioned thereby, notwithstanding a part of the ground belonging to the dredging company had not been worked by it.

Appellant contends that the award is void upon the ground that the majority of the arbitrators took into con-

sideration items not covered by the submission agreement, and failed to take into consideration items and matters which they properly should have considered in arriving at the amount of damages. In the several items of damage listed in the statement furnished by the dredging company and used by the arbitrators in making their award, charges are made for labor in removing logs, brush, riprap, débris and other obstructions placed upon the dredging company's mining claims by the lumber company. These items, it is contended, are not within the submission agreement as damages growing out of failure to remove its "structures," etc. The evidence taken before the arbitrators is not before us, and any and all of the enumerated items might have been part of a temporary roadbed for a logging railroad. So far as the evidence before us shows, they might have been part of the "structures" (roadbed, skidways, log landings, etc.) contemplated by the easement agreement.

Appellant attacks certain items of the statement of damages, viz., item No. 6, cost of building dam to float dredge over obstructions, item No. 8, and a portion of item No. 10, loss of dredging time. It appears from the award that the last two of these items were disallowed by all the arbitrators, and items Nos. 6 and 8 are not objected to in the amended motion to vacate the award.

Appellant further contends that item No. 9 of the statement of damages allowed by the arbitrators, in the sum of $1,994.03, on account of loss in a dredgable yardage, should not have been allowed. It appears from said statement that this ground was rendered undredgable by material placed in the base of its railroad grade by the lumber company; that the net value of the recoverable gold content of the lost yardage, after deducting estimated expense of working, was estimated and found to be less than the cost of removing the material from the ground. The damages under this item were fixed at said net value. The method pursued reduced the damages to be paid by appellant, and we think fairly lies within the rule laid down in *Christensen v. Gorton*, 36 Ida. 436, 211 Pac. 446.

The arbitrators allowed $2,750 damages on account of damage and depreciation of the dredge machinery and hull because of bucking rocks, etc., placed by the lumber company on the "Dessie D.," "Star," and "Morning Star" mining claims, and another $1,000 on account of extra wear and tear on the machinery. Appellant contends that this charge is not allowable because it was the dredging company's duty to remove these obstructions and not damage the machinery, etc. Primarily, it was the lumber company's duty to remove these obstructions, and, if removed by the dredging company, the latter was to be reimbursed for its costs in so removing them. Since the evidence is not before us, we are unable to determine whether this charge is for damages growing out of damage to the dredge and machinery by reason of the company's operations in removing the obstructions, or whether it is for damages incurred by reason of the attempt to dredge the ground without first removing the obstructions. This being true, we cannot say, as a matter of law, that the charge is not allowable or that it is excessive.

Appellant argues that the award is excessive, and cites the letter of the dredging company, dated April 26, 1928, requiring the lumber company to remove its obstructions, wherein it is said they have, prior to April 15, 1928, suffered a loss of "over $5,000" by reason of the works on the Grimes Creek placer deposits, and also a letter dated January 14, 1928, in which it is stated that the condition will exist most of the way through the narrow canyon which extends for 6,000 feet ahead of the dredge up Grimes Creek. It is also stated that the dredging company has had several bids for the removal of the structures on this 6,000 feet, and that the best bid was $2,000 for removal of the structures on top of the ground, and did not include obstructions the lumber company had buried beneath the surface. Again, we are unable to say that the amount of the award is excessive, not having the evidence before us upon which it is based.

Appellant appealed from the judgment entered on October 27, 1928, and from the order denying appellant's amended motion to vacate the award of the arbitrators. The judgment does not appear in the transcript, and the record fails to show its date of entry, other than by the clerk's register showing it to have been filed on the above date. The amended motion to vacate the award was filed on November 16, 1928. The order denying the same was entered January 9, 1929. The original motion to vacate is not in the transcript. The appeal is governed by the provisions of C. S., sec. 7436, which reads:

"The decision upon either motion is subject to appeal in the same manner as an order which is subject to appeal in a civil action; but the judgment, if entered before a motion made, cannot be subject to appeal."

California, under almost the identical statute (Cal. Code Civ. Proc., sec. 1289), has held that an appeal does not lie from the judgment entered on an award before "the decision of a motion to vacate or modify it." (*In re Connor*, 128 Cal. 279, 60 Pac. 862; *Utah Const. Co. v. Western Pac. Ry. Co.*, 174 Cal. 156, 162 Pac. 631.) The latter case seems to hold that the appeal from the judgment does not lie in any case. In the instant case, the record is not sufficient to permit consideration of the appeal from the judgment. The appeal, therefore, has been considered as from the order denying the motion to vacate the award, under C. S., sec. 7434, which provides that an award may be vacated by the court, on motion, and a new hearing ordered, when: it was procured by corruption or fraud; the arbitrators were guilty of misconduct, or committed gross error in refusing, on cause shown, to postpone the hearing, or refused to hear pertinent evidence, or acted improperly otherwise to the prejudice of the rights of the party; the arbitrators exceeded their powers in making their award; they refused or improperly omitted to consider a part of the matters submitted to them; the award is indefinite, or cannot be performed.

Upon the record before us, we are not justified in vacating the award in this case upon any of the grounds mentioned. Order and judgment affirmed. Costs to respondent.

Givens, C. J., Lee and McNaughton, JJ., and Sutton, District Judge, concur.

(June 7,1930.)

ON PETITION FOR REHEARING.

VARIAN, J.— Appellant contends that the itemized statement of damage, furnished by the dredging company prior to the hearing before the arbitrators, conclusively shows that they considered items not embraced within the submission agreement. We think the award does not go beyond the matters in controversy as understood by the parties to be in controversy. As has been said, technical precision is not required in either the submission or the award (5 C. J., p. 36), and the submission will be construed "with reference to, and in view of, all the surrounding facts and circumstances." (5 C. J., p. 124.) Nor are arbitrators required to find facts or give reasons for their award. (*In re Connor*, 128 Cal. 279, 60 Pac. 862; *Dugan v. Phillips*, 77 Cal. App. 268, 246 Pac. 566.) "The submission, rather than the award, controls the question of what matters were submitted to arbitration." (5 C. J., p. 117.) It appears from the submission agreement that it covered and was intended to include all claims and demands arising out of or by reason of the easement agreement of 1922, applying to the mining claims theretofore worked as well as those not yet worked. The intention was that "the controversy be fully and finally settled by this arbitration."

The lumber company also urges that the dredging company "elected" to remove the obstructions. The election in the first instance was with the lumber company. Under the easement, it was its duty to remove the obstructions

placed on the mining claims by it, and only in case it elected not to do so was the dredging company permitted to remove them under said agreement.

The petition for rehearing is denied.

Givens, C. J., Lee and McNaughton, JJ., and Sutton, District Judge, concur.